LANE, J.
This is an application for the writ of quo warranto, by which the right of Robert Buchanan to hold the office of director m the Commercial Bank of Cincinnati is submitted for adjudication. The facts are presented in an agreed case. On the 6th of May, 1833, Buchanan was duly elected a director of the bank. At that time, he was a partner in business with E. Yorke, of New Orleans, a director of the Canal Bank there, and also with C. McAllister, of Philadelphia, a director of the Bank of the United States. By the charter of the Commercial Bank it is provided, that no director of any other bank, or partner of such director, shall bo eligible to the office of director of that bank. Whether the legislature intended to disqualify the partner of a foreign bank director from holding a directorship here, is the subject of inquiry, and the first resort must be had to the words by which the disability is created, to learn the intention. In their ordinary and more obvious meaning, the words used extend to the present case, and the incompetency of Mr. Buchanan is complete, if this be their legal sense. But the respondent insists that the words used are not to be presumed to refer to any other than domestic corporations — foreign banks being beyond the jurisdiction, must be taken to be beyond the purview of the act, and that for some principle of reciprocity, which I do not well understand, we ought not to sustain a disability in the citizen, arising' from alliance with foreigners, because no such disqualification attaches to them from their connection with us. But the words of a statute are not the only sources from which its meaning is to be gathered. It is one of the most familiar duties of a court to consider its object, scope, end, the form of its remedy, and the evils that led to its adoption, so that it may receive that interpretation which will work its due effect. And we think we may derive much light from these sources, as to the intention of the legislature. The monetary system of every community is one of the most important *240 ■parts of it's civil policy, and the franchise of banking is, perhaps, a trust more confidential, more liable to abuse, and if abused followed ,236] *by more consequences, than any committed by government to its citizens. It ought, therefore, to be restrained by such bounds as tend to prevent its abuse. The power which flows from the management of a bank may be injuriously exercised, either to the undue advantage of its managers, orto the prejudice of those who depend upon them for accommodation, and as these evils, particularly the last, would be much increased by extending the power, perhaps this led the legislature to disable the same person, or the same interest from acquiring a controlling influence in two institutions.
, The recent failure of so many banking corporations in this state coitld not have been forgotten. The cause of this failure was over trading. As the profits of a bank are chiefly from the extent of its circulation, there is a strong and constant temptation to extend its issue too far. The proper check to this evil' may be found in the necessity of sustaining its credit, by providing for the return of its notes. When such an institution depends on its own resources the remedy is promptly applied, for the ordinary course of business, 'the interests of individuals, and especially the interests and jealousy of rival institutions, confine the notes of each bank to its own circle of business where its credits can be estimated, and by a speedy return of such notes as are not required for its business, prevent the risk to the public, from the undue extension of its issues. But if ■banks should combine, instead of acting independently, it is easy to see that means might be devised to crowd into circulation notes to an unsafe amount. There is a house in Massachusetts which controls one banking institution in its own state, two in New York, one in ■Ohio, and one in Michigan, extending over more than 600 miles. By remitting notes for issue remote from the place of payment, .and by other means, they have the power to sustain in circulation a greater amount from the combined banks than they would be able to do if each stood alone. And if they were disposed to be dishonest, they might perpetrate frauds to an immeasurable extent, and might even escape a part of the odium by sacrificing the distant branches. Indeed, some of the worst frauds in our country have been carried into execution by the combination of fraudulent bankers. It is then the alliance between banks, the co-operation of those who ought to act as checks upon each other, which the legislature sought to prevent, and for this end have required that they shall have no officers in common. If this be the mischief to be guarded against, and the means by which it is to be effected, it is *241 evident, from the ease of communication and the state of business in our country, that the remedy would be wholly ineffectual if it *only restrained too close a connection between banks of this [237 state; indeed the evil would be in some degree increased by the remoteness of the allied institutions from each other. The examination therefore of the design of the law to learn the intention of the legislature leads us to the conclusion that a partnership with a director of a foreign bank was intended to be forbidden, and that the present case is fully within the scope of the restriction.
In considering this matter, I have not deemed it necessary to make any distinction between the two partnerships, or the greater damage claimed to arise from Buchanan’s connection with a director of the U. States Bank, since either, in our opinion, is sufficient to exclude him from the office to which he is elected.
A writ of quo warranto is ordered, therefore, to inquire by what authority Buchanan holds his office. On the return of which the requisite judgment will be pronounced.
COURT. Can you agree upon the day of the return?
The counsel for the state proposed any day of the term for trial. The defendant’s counsel denied the right to issue a writ and direct its return on a particular day. It was insisted that the question was a new one, and time was asked to examine the course of common law, which was allowed. On another day the writ was ordered, and made returnable forthwith. The writ which issued recited the proceedings had upon the rule fully, as in a declaration. On the return of the writ the state asked for a short rule to plead. The defendant contended that the cause must go to the common rules, as other cases, and to that end must be continued.
WRIGHT, J. Authority is conferred upon this court to issue writs of quo warranto, when necessary to enforce the due administration of justice throughout the state, and to exercise jurisdiction when the writ issues agreeably to the usage and principles of law. The due administration of justice is the end aimed at — the means to be employed are such as accord with the usages and principles of law. Officers in this state are mostly elected annually. Quo warranto is the legal writ to try the right to hold office, and for ousting an usurper. This court sits but once a year. The writ does not issue except upon motion, and after rule and cause shown, and if when issued it must go to the common rules for pleading, and a continuance is to follow of course, the remedy will prove wholly ineffectual; for the office usurped would expire before the complaint *242 would be got ready for trial, and the judgment of ouster, if rendered, would operate upon a person no longer in possession of the office, or if in possession under a new election, asserting a new claim to 238] *the place, or new color of right. , We must so exercise this jurisdiction as to give effect to the administration of the law, and not take a course certain to render it nugatory. Unless, therefore, counsel otherwise agree, the defendant will be ruled to plead by tomorrow morning, and a venire will issue for a jury returnable at that time for the trial of the issues, if a jury is required. Lilly’s Enit. c. 10-4; 4 Con. 95-123, 297, 358; Com. Dig. Quo War. c. 4, plea, &c.
King, for the state,
read the writ and stated the issue. He was proceeding to read the agreement of counsel, used upon the hearing of the rule to show cause, when
Hammond objected,
that it was not evidence — it was not an*' agreement by the defendant, but one made by his counsel for another purpose altogether.
King insisted that the agreement
was made by the contest of the *243 party, and intended to bind him. He did not expect such an objection from such a quarter.
*242 ■ The defendant’s counsel asked to have the question reserved to the Court in Bank, which was refused. They then pleaded not guilty to the writ, upon which issue was taken.
When the jury was called, Hammond, for the defendant, objected that the venire was a special one. This is a highly important power the court is exercising, and it should proceed cautiously and legally. We have a right to the standing jury, and insist upon the right. As the standing jury has been discharged, we contend this cause cannot be tried at the present term, without violating our right to the standing jury.
WRIGHT, J. This court has been in the uniform practice, where the standing jury is out, or where, for any cause, a jury is wanted, and the standing one is not in attendance, either to order talesmen summoned into the box without writ, or to issue a special venire for a jury. The standing jury is not now in attendance; we have the issue in fact to try, and have issued a special venire for a jury, in the usual way. We know of no right in the parties litigant to select their own jury, or to prescribe to the court which of several legal ways it shall resort to, to compel the attendance of a jury. The objection must be overruled, and if there be no challenges, the jury may be sworn. The jury was then sworn.
King then offered Wm. S. Hatch to prove that McAllister and Yorke were directors, &c.
Mammond objected,
that better evidence of these facts existed on the corporation records, and they must be produced, or their non-production be accounted for, before lesser evidence can be received.
King — The position taken by the other side is in general true.
If it is not competent to prove by parol that McAllister is a director, it is competent to prove that the defendant admitted that he was, and that I will do.
Hatch, being sworn,
said that he had heard the defendant admit some time ago, that McAllister was a director in the Bank of the United States, and Yorke a director of the Canal Bank at N. Orleans, but had never heard such admissions since the 6th of May, or anything which showed they were then or are now directors.
Caleb Bates was called as a witness.
Hammond objected, his interest.
He is the real complainant, and seeks the place of the defendant if he be ousted.
King could not see the interest of the witness.
WRIGHT, J. The paper offered is an agreement by counsel upon the rule to show cause; it is not an admission by the defendant, if it were it could be used against him: in its nature it assimilates itself in our view to the admission of a demurrer, of no avail except on *the particular question where it was used. The offer to [239 read a paper of this kind does not address itself to the court, to sustain a legal right — it seems to be solely addressed to the courtesy and discretion of counsel, over which we have no control. Unless by consent the paper cannot be read.
WRIGHT, J. It is competent to prove the defendant’s admissions.
WRIGHT, J. The witness appears on the proceedings as the prosecutor in fact, and to have a direct interest in the event of the suit. He claims that he was elected a director of the Commercial Bank, and that the defendant usurping his right has ousted him *244 from the office: and he asks of us to put the defendant out and himself into that office. He is inadmissible. -
King then proposed that Bates release to the defendant all his interest in the office.
P. Benson was sworn,
and showed a slip of a newspaper containing a list of the directors of the Bank of the U. States, and was proceeding to state his understanding that the persons whose names are on the list are directors of the Bank, when
Hammond stopped him.
WRIGHT, J. That will not discharge his interest. If the judgment should be in favor of the state, the release will not avail the defendant, nor prevent the witness from obtaining the offic.e. A resignation of the office will restore his competency.
* WRIGHT, J. I suppose the state will not contend that this is evidence.
Pates was again called, resigned his office, and was sworn. He said he had a conversation with Buchanan, in which he said he had admitted and should admit all the facts necessary to sustain the action. He intended to admit everything we might wish to prove. At another time he said he understood he was to be nullified; the witness replied, yes, when he said, well, I have admitted all the facts that may be necessary. No facts were mentioned which had been admitted, in either conversation.
The cause was submitted without argument.
WRIGHT, J. to the jury. Before the state can claim a verdict at your hands, it is bound to prove the allegations set forth in the writ, as well that McAllister and Yorke were directors, as the other, allegations. The court has heard no evidence to sustain either allegation. You can retire if you desire it, or agree in the box.
Verdict, without retiring, of not guilty, and judgment for the defendant thexeon.